UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Cesar A. Barreto,

    Plaintiff,

v.

Experian Information Solutions, Inc.,
Trans Union LLC and
Nationstar Mortgage LLC, successor by merger
to Seterus Inc.

    Defendants.

Civil Action: 3:24-cv-895

With Jury Demand Endorsed

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Cesar A. Barreto ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Experian Information Solutions, Inc., Trans Union LLC, and Nationstar Mortgage LLC, successor by merger to Seterus Inc. jointly, severally, and in solido, states as follows:

### I.   INTRODUCTION

1. Two of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC, successor by merger to Seterus Inc.is

a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2.      Plaintiff, Cesar A. Barreto, is a natural person residing in San Diego County, California, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street,

Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5.  Upon information and belief, Defendant Nationstar Mortgage LLC, successor by merger to Seterus, Inc., which may also hereinafter be referred to as "Nationstar," "Seterus/Nationstar," "Seterus," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.  As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

## III. JURISDICTION AND VENUE

7. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8. Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texasas further described. 28 U.S.C. § 1391.

9. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

10. Upon information and belief, in or around December 2006 Plaintiff secured a

mortgage for his property located at 2865 Weeping Willow, Chula Vista, CA 91915.

11. Sometime thereafter, Seterus, Inc. acquired Plaintiff's mortgage loan for his property and assigned loan number 66062xxxx, hereinafter ("Seterus mortgage account").

12. On July 20, 2017, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

13. On February 25, 2019, Plaintiff Chapter 13 payment plan was confirmed. See Exhibit "A".

14. Sometime in 2019, Nationstar Mortgage LLC acquired Seterus, Inc and assumed the servicing and furnishing responsibilities. Plaintiff's Seterus mortgage account was included in the sale and Nationstar became the furnisher for this account.

15. In September 2021, Nationstar transferred Plaintiff's mortgage to Ajax Mortgage Loan Trust.

16. On May 11, 2023 Plaintiff was discharged from his chapter 13 bankruptcy, and excepted from discharge Plaintiff's mortgage, once serviced by Seterus, then Nationstar. Then Ajax Mortgage Loan Trust. Ajax Mortgage Loan Trust is listed in the Notice to Creditors. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order with Notices is attached hereto as Exhibit "B".

17. Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

18. On August 28, 2023, Michael Koch, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "C".

19. On or around September 6, 2023, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

20. The mortgage loan once serviced by Seterus, Nationstar and Ajax is now closed and paid.

21. Sometime in December 2023, Plaintiff obtained his three-bureau credit report and noticed that the Experian, and Trans Union credit report were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

22. Within the Experian credit report Plaintiff noticed that it inaccurately reported the Seterus mortgage account. The report stated "derogatory" in as account rating, that the mortgage was subject to a "wage earener plan", and that the account was involved in, or part of , Plaintiff's chapter 13. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Seterus/Nationstar mortgage debt from being discharged; therefore, any remarks and/or references to and/or suppression information related to Plaintiff's chapter 13 bankruptcy should have been removed from the Seterus Mortgage tradeline after the Bankruptcy was discharged. [1]

23. Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

24. Within the Trans Union credit report Plaintiff noticed that it reported the Seterus mortgage account without the correct update that indicated that this secured debt was initially filed. This led to reporting this account as "open", even though the account has been trasnfered to a new leneder. The report also stated "derogatory" in as account rating, that the mortgage was subject to a "wage earener plan", and that the account was involved in, or part of , Plaintiff's chapter 13. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Seterus/Nationstar mortgage debt from being discharged; therefore, any remarks and/or references to and/or suppression information related to Plaintiff's chapter 13 bankruptcy should have been removed from the Seterus Mortgage tradelines after the Bankruptcy was discharged. [2]

25. Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

26. In or around December 2023, Plaintiff sent direct disputes to Experian, Trans Union, and Nationstar and requested that the CRA Defendants and Furnisher Defendant investigate the reporting of the Seterus mortgage account. Plaintiff requested that under the FCRA, each Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Seterus mortgage account.

27. Within these dispute letters, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Experian, Trans Union, and Nationstar are attached hereto as Exhibits "E", "F", and "G", respectively.

28. On January 19, 2024, Experian responded "This item was either updated or deleted. Please review your report for the details." A redacted copy of the Experian's response is attached hereto as Exhibit "H".

29. Plaintiff then obtained an updated copy of his three-bureau credit report on March 6, 2024, and within the Experian credit report Plaintiff noticed that the Seterus tradeline had been

deleted in its entirety. A redacted copy of Plaintiff's March 6, 2024, three-bureau credit report is attached hereto as Exhibit "I".

30. Experian's response was not the result of a reasonable investigation into Plaintiff's dispute(s) and it failed to remedy the inaccuracies within the Seterus tradeline, and gave no explanation as to why it failed to sufficiently update the Seterus Mortgage tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

31. Plaintiff sent a very clear dispute, and yet Experian made no changes to the disputed information, bankruptcy status, and/or account status.

32. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Seterus account.

33. Upon the Plaintiff's request to Experian for verification and addition regarding the Seters mortgage account, and in accordance with Equifax's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Experian did not make any attempt to substantially or reasonably verify the Seterus Mortgage account.

34. In the alternative, and in accordance with Experian's standard procedures, it failed to contact Nationstar, therefore, failed to perform any investigation at all.

35. In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

36. On January 9, 2024, Trans Union responded, "In response to your dispute, this item was DELETED from your credit report." A redacted copy of the Trans Union's response is attached hereto as Exhibit "J".

37. Plaintiff then obtained an updated copy of his three-bureau credit report on March 6, 2024, and within the Trans Union credit report Plaintiff noticed that the Seterus tradeline had been deleted in its entirety. *See* Exhibit "I".

38. Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Seterus tradeline and gave no explanation as to why it failed to sufficiently update the Seterus tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and was successfully discharged.

39. Plaintiff sent a very clear dispute(s), and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

40. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Seterus account.

41. Upon the Plaintiff's request to Trans Union for verification and addition regarding the Seterus mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Seterus Mortgage account.

42. In the alternative, and in accordance with Trans Union's standard procedures, Trans

Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

43. In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

44. On January 22, 2024, Nationstar sent Plaintiff a letter confirming that they received Experian's inquiry on January 14, 2024, and issued Experian a response on January 19, 2024. A redacted copy of Nationstar's Letter to Plaintiff Concerning the Equifax Inquiry is attached hereto as Exhibit "K".

## V. GROUNDS FOR RELIEF

### COUNT I – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

45. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

46. Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

47. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

48. Plaintiff furnished Experian the necessary documentation supporting Plaintiff's tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

49. Despite actual and implied knowledge that Plaintiff's credit reports were and are not

accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

50. After Experian knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Seterus mortgage tradeline to be deleted.

51. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

52. Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

53. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

54. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

55. Experian violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit

files, and relying upon verification from a source it has reason to know is unreliable.

56. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

57. Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

58. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

59. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

60. Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

61. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

62. Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's

tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

63. Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

64. After Trans Union knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Seterus mortgage tradeline to be deleted.

65. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

66. Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

67. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

68. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

69. Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful

reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

70. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

71. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

72. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT V – NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

73. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

74. Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

75. Nationstar further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly

investigate the Plaintiff's dispute(s) of the Seterus representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Seterus representations to the consumer reporting agencies.

76. As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

77. Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## V. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

78. Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VI. DAMAGES

79. Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including

Texas.

80. Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA, and/or other laws.

81. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

82. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

83. Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

84. Defendants have negligently and/or willfully violated various provisions of the FCRA, and are thereby liable unto Plaintiff.

85. Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Cesar Barreto, prays that this Honorable

Court:

  A. Enter Judgment in favor of Plaintiff and against Defendants Experian Information Solutions, Inc., Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

  B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

  C. Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

  D. Order that the CRA Defendants, Experian Information Solutions, Inc. and Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

  E. Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: April 12, 2024

                Respectfully submitted,

                */s/ Matthew P. Forsberg*
                Matthew P. Forsberg
                TX State Bar No. 24082581
                Matt@FieldsLaw.com
                FIELDS LAW FIRM
                9999 Wayzata Blvd.
                Minnetonka, Minnesota 55305
                (612) 383-1868 (telephone)
                (612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

                /s/ *Jonathan A. Heeps*
                Jonathan A. Heeps
                TX State Bar No. 24074387
                LAW OFFICE OF JONATHAN A. HEEPS
                *Of Counsel to* FIELDS LAW FIRM
                Post Office Box 174372
                Arlington, Texas 76003
                Telephone (682) 738-6415
                Fax (844) 738-6416
                jaheeps@heepslaw.com

                COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

      Plaintiff hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| <u>April 12, 2024</u> | <u>*/s/ Matthew P. Forsberg*</u> |
| Date | Matthew P. Forsberg |